May it please the court.  Defendant Appellant Paul Marino was serving a sentence for wire fraud when his supervised release term was revoked in July of 2015 based on several violations found by the district court, including two new criminal offenses, fraud against Dell Computer and public assistance fraud. He was sentenced to serve one year imprisonment to be followed by two years of supervised release, the first 12 months of which to be served at Coolidge House, a community confinement facility in Boston. Virtually all of the evidence that underlies the court's finding that he committed fraud against Dell was based on hearsay, and the court specifically said that his finding in that regard did rely upon hearsay, but that the court found that hearsay to be reliable. There was no witness from Dell who testified. There were no business records from Dell. Rather, there was testimony from two police officers who essentially recounted what somebody, a representative from Dell, had told them over the telephone and a report written by a non-testifying police officer. Now, under Rule 32.1, the defendant has a limited right of confrontation to question adverse witnesses at a supervised release revocation hearing unless the court finds in the interest of justice that the witness need not appear. In this case, the government did not, and that requires under this court's cases, specifically the pair of cases Tavares and Rondo, it requires the district judge to balance the defendant's right of confrontation against the government's reasons for not producing the witness. That balance is supposed to occur. Here, the government did not proffer any reason during the hearing for why it didn't call a witness from Dell, for why it didn't have any Dell business records. So to the extent that balancing was required, we submit that the government failed to, can't possibly succeed on its side on that balancing because it didn't even proffer a reason. Well, the government points to a few things to suggest that the information, the hearsay information from Dell had some issue of reliability. The photographs, the wife's statements. Well, Your Honor, again, the photographs, there was nothing authenticating basically what those photographs were, who had sent the materials. The photographs, essentially, were really more hearsay. The statement attributed to the wife is, again, more hearsay. There was nothing for the defendant to cross-examine. There was no one for the defendant to confront. And the material, the goods actually found in his home. There were goods found in his home, Your Honor, that's true. But there was no non-hearsay evidence that those goods had been stolen from Dell. Well, let me ask you about that. Don't we have the sequence here is Hudson was the fellow who was in Texas. So we know he's in Texas. He makes an allegation that certain computer equipment had been stolen and gives the serial numbers. This is all before anyone had actually searched your client's place. When the police do go to your client's place, they find the exact same serial numbers. And they also have him testifying that he had no earned income that could account. This is from your client's own phone number. Why isn't that? How else do you then explain him having those computers in his place? Well, Your Honor, the only evidence that these computers had been stolen from Dell came from this person, Hudson. And there was no evidence about really his credibility, his reliability. And in fact, the judge specifically said that those statements were only coming in to establish that somebody from Hudson had said those things. So I don't think that those statements, in other words, they did not match up. Yeah, but Judge Peata is asking you, if your client had no income, how could he afford to purchase the computer equipment because his wife, even if it's hearsay specifically, disavowed any interest in it? Well, Your Honor, his wife could have had an income. There was no evidence presented that he was not earning any income. This is all based on hearsay. Yeah, but it seems to me your argument largely disregards the fact that hearsay is permissible in sentencing proceedings and in supervised release proceedings such as this where the violation is admitted and the only question is what the sentence is going to be. So the question then becomes, sure it's hearsay, but is it reliable? There's no motive for Dell to falsify this. That list of the serial numbers that Dell provided didn't materialize out of thin air. It wasn't constructed after an examination of the defendant's premises. The computers that are reported stolen are then found to exist in the defendant's possession. There's no explanation for why they're there other than his wife saying, I didn't order them, Paul ordered that stuff. Why isn't that reliable hearsay? It's not reliable because it's not written, it's not sworn, there are no business records. This is a written list of serial numbers. But all those are lists of the serial numbers that were found in his house. I mean, that's what that list of serial numbers is. There was no list provided by Dell, there's no business records. Dell provided a list to the New Bedford police. Well, that's what, it's in the report, it's in the police report, whatever that means. And it seems to me you're defining the reliability test for hearsay evidence in terms of the type of evidence that would make it non-hearsay. No, Your Honor. That's a tautology. No, Your Honor, because, for example, in Rondo, this court said you had written witness statements, and you had testimony of a police officer who had interviewed the witness multiple times. And the court said that is sufficiently reliable. Well, we have a business record, and you make a good point. If they'd gotten from Dell a list, then you'd eliminate from the equation the possibility that the police officer made it up, or the police officer misheard him, all the sort of hearsay stuff we worry about. So I understand that. But when you have a prior report from a police officer listing serial numbers, and voila, they exactly match what is subsequently found, how would we then have any concern that the police officer either made it up or misheard? We don't know with 100% certainty that that recitation of information from Hudson must have been a correct recitation. Your Honor, as I read that report, and it's in, I think it's 321 to 324, the appendix, that is a list of all the things that were found in his house. It is not a list that was taken from Dell. That's not how I read it. I did not see any lists from Dell. And this is, I mean, there has to be some degree of reliability that's not just speculation. I mean, somebody's liberty is at risk here. I mean, why couldn't they get business records? Why couldn't they have a witness? This is just too sloppy. And if you look at the continuum between Tavares and Rondeau, this is just much more like Tavares. This is just unsworn statements over the telephone alleging that this person committed a fraud, which basically are used to sentence him to prison. And he did not concede that violation, Your Honor. He conceded that he did violate supervised release. So then what we're concerned with at this hearing is what his punishment is going to be. Well, Your Honor, Judge Gunn said that the Dell computer alleged fraud, if proven, would, quote, drive the sanction. And the hearing was bifurcated. This was not just a sentencing hearing. This was a hearing about whether he committed these other crimes. And as Judge Gunn's finding by preponderance, he committed these other crimes, which led to the sentence that was imposed. So the fact that he conceded that he committed other violations does not turn this into a sentencing hearing, I submit. And the Rule 32.1 still applies. And this hearsay should not have been admitted. And without this hearsay, clearly, the evidence was insufficient. The evidence was also insufficient on the alleged welfare fraud. There was no witness from the Department of Transitional Assistance. There were no records showing that he had received any benefits. There were no bank records showing that he had income that he hadn't reported. Again, this was based on hearsay and allegations. And this Court should not countenance that kind of a showing to justify, even under the lesser standards of a supervisory re-certification proceeding, somebody's loss of liberty. And finally, I ask the Court to consider that 12 months in a halfway house, which is double the amount that the policy statement for the guideline says is generally the highest that should be imposed, was an excessive imposition on Mr. Reno's liberty. But isn't the guideline policy statement addressed to initial violations of supervised release, not repeat violations? I don't think it distinguishes, Your Honor. No, but common sense tells you that if you have a violation of supervised release and the defendant is given a relatively light sanction for it, and then there's a further violation, that the sanctions are going to go up. Well, Your Honor, I think that's not the point of community confinement, as I read that policy statement, is that to go beyond six months, unless it's for a specific rehabilitative program, it's essentially punishment. It's not supposed to be punishment. It's supposed to be a rehabilitative program. And when you go as high as 12 months, it's essentially the imposition of additional imprisonment in the guise of a halfway house sentence. And that's why I opposed it. Thank you, Counsel. Good morning. May it please the Court, Francesco Valentini for the United States. May I ask, Counsel, that you start where defense counsel ended, start with this rather long term of community confinement tacked on to the end of the supervised release? Absolutely. The district court, in imposing a one-year term of community confinement at the beginning of the 20-month term of supervised release, took into account what is a long history of sequential violations of ordinary terms of supervised release by defendant Marina. This was not Marina's first conviction. It was not Marina's first experience with supervised release. His experience is failure of supervised release goes back to his first conviction with credit card fraud back in 1995. At that time, he served his term of imprisonment and then was placed in supervised release. His probation officer at the time commented that he had failed to adjust, to make a proper adjustment to supervised release at that time. Then he was convicted again for the underlying offense in this case. And as Marina went to the district court on this supervised release revocation hearing, he admitted several violations. Several more were established. This is someone who has a long history of inability to operate under ordinary terms of supervised release. The district court acted well within its discretion in concluding that a term of adjustment would be important and would not only serve the interest in protection of the community, but also serve the specific interest in rehabilitation by providing Marina with a structured environment where he could deploy what are the employable skills that he has acquired over the years in a non-fraudulent way. So we believe that the condition that we recommended, that the probation officer also recommended, and the district court ultimately imposed was well within the district court's discretion. If I may step back, the revocation hearing in the district court went to great lengths to ensure that the defendant's due process rights, including his limited confrontation rights, were properly protected. A prime example of that is the district court's careful process in admitting the serial numbers of the stolen doll items that were found in Marina's residence. Could you confirm what the sequence was of the police's acquisition of the serial numbers? Is it clear that someone recorded the numbers purportedly from a conversation with Hudson prior to examining what was found in the defendant's house? That is correct, and the sequence is precisely as Your Honor previously described it. On page 154 of the record, Detective Espinal, who participated in the search, testified that Detective Brown had at the search a list of all the items he was looking for and the serial numbers and makes and models. And then as the detectives were going through the search, they were seizing the evidence, the piece of equipment that matched the serial numbers. And then how do you respond to the point that the defendant makes that normally what we ask a judge to do before relying on hearsay in one of these situations is to balance the prosecution's, the government's, reason or need not to present the person against the sort of probative force of it in addition to reliability. In hearsay, I understand the argument, the government offered no explanation for why it wasn't calling Hudson or providing an affidavit from Hudson. And the government, the court, therefore, never undertook that balancing. Well, to be clear, the district court made clear that it didn't undertake that balancing. In fact, the district court, after a recess, took the opportunity to, during a recess, had the opportunity and did go back and look at this court's decisions in Tavares and Rondo. And the court then came back, summarized the upshot of those cases and the balancing test that is envisioned under those cases, and said, have conducted that balancing test. So what was the government's justification for not, for example, at least having an affidavit from Hudson? OK, so with respect to the, so first, the justification, the good cause is for the inability to, or for the inability, for the failure to produce the declarant as a live witness, not for the inability or the decision or the happenstance that other forms of evidence that were not, that were not live evidence were offered into evidence. But doesn't that follow logically if we ask the government to show why it can't actually produce the person? And the government has a good reason for that. Before we jump entirely to the other end of the spectrum of saying a phone call is OK, we would prefer to have some writing and therefore ask why there wasn't at least an affidavit. Absolutely. That is true. In this case, the record had, or it was undisputed on this record that Hudson, the representative from Dell, was based in Texas. And that was not disputed. And the reason why the government did not expressly explain to the district court that that was the basis why Hudson had not been produced as a live witness, and why, frankly, the district court did not perhaps expressly explain that that was the basis for its finding of unavailability, is because the defendant, when he challenged the admissibility of that evidence, relied exclusively on reliability at two distinct points in the record. The defendant raised these cases, Tavares and Rondo, and said under those cases, the evidence here is not sufficiently reliable. But there was no dispute on the part of the defendant that the showing on this record that Mr. Hudson was unavailable, was out of the jurisdiction, and was based in Texas provided a sufficient basis with respect to the good cause part of the inquiry. That was not a disputed issue. So this situation is much like an instance in which a sentencing, a district court may now go down a checklist of 3553 factors. So I think the way you want us to hold is you want us to hold that as long as the witness is physically unavailable to be at the hearing, then the prosecution can produce whatever is minimally reliable, as long as it meets reliability standard, and has no obligation to justify why it did not instead produce some other form of hearsay testimony that was inherently far more reliable. No, I think upon request, the government may be asked to produce an explanation of why other forms of evidence that may be more reliable were not produced. In this case, the government was not asked. That was not the nature of the objection. And that is why we don't have an express explanation. In fact, what we do know is that the government did try to call to the stand Detective Brown, who had led the investigation on behalf of the New Bedford Police Department. As part of that investigation, Detective Brown had received documents from Dell. And if he had been available, now for his absence, there was plenty of explanation on the record. But if he had been available to testify, it is possible that he would have put in additional documentary evidence from Dell. So in this case, if the record is not as exhaustive as one might ideally want with respect to the explanation piece of the inquiry, that is because that was not the nature of the objection. So is it your position that the defendant in effect took an all or nothing position and said this evidence is unreliable unless someone from Dell appears to testify and state everything on that? And that relieved the government of any burden of considering the possibility of an affidavit? No, I think our position is that the defendant in this case argued to the district court that the evidence was unreliable, period. He did not argue about what other possibilities may suffice. He just argued one side of the balancing inquiry. The other side, the fact that Hudson was based out of Texas and was not produced for that reason, was just not argued. But is that the defendant's burden to argue that the defendant says evidence is unreliable? The government propounds evidence in a form that it says is reliable and ignores the fact that there is presumably easily available to the government more reliable forms that are not impractical to obtain and not expensive, such as bringing a witness from Texas. And you're saying that if the defendant doesn't raise that question, the government has no burden to explain why it didn't use these intermediate steps. That it can simply put on the table, to use Judge Chiara's phrase, the minimally reliable evidence and stand by that. Well, to be clear, we don't believe that the evidence that was offered in this case was minimally reliable. But certainly an affidavit from Hudson would have been a more reliable way of showing what computers were allegedly stolen than anything that the government put in. Yeah, that is correct. That evidence would have been more reliable. But that issue would only pertain to the reliability side of the balancing test, not the burden. The burden side of the inquiry was addressed by the showing that the declarant was not available. And in terms of reliability, because the evidence was sufficiently reliable, and in any event, any error in this case was harmless, we would ask the court to affirm. Thank you.